# In the United States Court of Federal Claims

No. 11-205 C
(Filed: February 2, 2012)
**TO BE PUBLISHED**

| | |
|---|---|
| THOMAS F. SPELLISSY,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | Military pay case; 10 U.S.C. § 1370 and Army Regulation 15-80 paragraph 4-1.a (July 12, 2002); retirement grade determinations for officers; money-mandating provisions; 10 U.S.C. § 1552 and Army Regulation 15-185 (Mar. 31, 2006); review of action by military correction board; Army properly reopened retirement grade determination based on plaintiff's post-retirement conviction for conspiracy where offense occurred before retirement; Army Regulation 15-80 paragraph 4-1.c; Army properly found plaintiff's service in the rank of Colonel (O-6) was not satisfactory in light of finding that plaintiff engaged in criminal conduct while on active duty; Army Regulation 15-80 paragraphs 2-4 and 2-5; law of the case, issue preclusion, claim preclusion, judicial estoppel. |

Jeffrey J. Del Fuoco, Washington, D.C., for plaintiff.

Joseph A. Pixley, Trial Attorney, Kirk T. Manhardt, Assistant Director, Jeanne E. Davidson, Director, Commercial Litigation Branch, Civil Division, Tony West, Assistant Attorney General, Department of Justice, Washington, D.C., for defendant. John G. Doyle, Captain, Litigation Division, United States Army, Fort Belvoir, Va., of counsel.

## OPINION AND ORDER

GEORGE W. MILLER, Judge

On April 4, 2011, plaintiff Thomas F. Spellissy filed this military pay action against defendant, the United States, alleging that the Army Board for Correction of Military Records ("correction board") improperly denied plaintiff's application to correct his military records to reflect that he retired in the grade of Colonel, O-6. *See* Compl. (docket entry 1). Specifically, plaintiff alleges that the United States Army, following plaintiff's post-retirement criminal conviction, improperly reopened his retirement grade determination and improperly found that plaintiff failed to serve "satisfactorily" in the grade of Colonel, O-6, for three years. Defendant filed a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Rules of the Court of Federal Claims ("RCFC") on the ground that

plaintiff's claim is non-justiciable[1] or, alternatively, for judgment on the administrative record pursuant to RCFC 52.1 (docket entry 9, Sept. 16, 2011). Plaintiff filed a response in opposition to defendant's motion (docket entry 10, Oct. 17, 2011), and defendant filed a reply in support of its motion (docket entry 11, Nov. 3, 2011). For the reasons stated below, the Court **DENIES** defendant's motion to dismiss for failure to state a claim because the Court concludes that plaintiff's claim is justiciable, and the Court **GRANTS** defendant's alternative motion for judgment on the administrative record.

**I.     Background**

   *A.     Events Preceding Retirement and Retirement from Active Duty*

  In March 2004, plaintiff, a Colonel in the Army, received a notice informing him that he would be "retired from active duty, released from assignment and duty, and . . . placed on the retired list" on December 31, 2004. Administrative R. ("AR") 000220 (docket entries 9-4 to 9-6). Plaintiff's retirement was voluntary and based on length of service. *Id.* In plaintiff's last assignment, he was the Program Executive Officer for Special Programs with the United States Special Operations Command ("USSOCOM") at MacDill Air Force Base in Tampa, Florida. *See* AR 000225–26.

  Plaintiff filed an application for permission from the Army to act as president of, and to engage in business development and consulting for, a company plaintiff had formed called Strategic Defense International, Inc. ("Strategic Defense") during plaintiff's impending "terminal leave"[2] before retirement. *See* AR 000183. Plaintiff represented that his work during "terminal leave" would "[i]nvolve working for a firm . . . that is engaged, or is endeavoring to engage, in business transactions . . . with an agency of the Department of Defense." *Id.* Plaintiff's application noted that he understood that he "w[ould] not be able to represent any Department of Defense Contractor to solicit business to [sic] the United States Government until after [plaintiff's] retirement date, 31 December, 2004." AR 000184. Plaintiff's application to work for Strategic Defense in the manner indicated was approved on July 23, 2004. *See* AR 000183.

---

[1] The case law is not clear whether a non-justiciable claim should be dismissed on jurisdictional grounds pursuant to RCFC 12(b)(1) or for failure to state a claim pursuant to RCFC 12(b)(6). *See Robinson v. United States*, No. 10-397, 2011 WL 4437715, at *1 n.1 (Fed. Cl. Sept. 23, 2011); *Def. Tech., Inc. v. United States*, 99 Fed. Cl. 103, 115 n.7 (2011); *BLR Grp. of Am., Inc. v. United States*, 94 Fed. Cl. 354, 361 & n.5 (2010). "Because the Court concludes that plaintiff's claim is justiciable, the Court need not further consider the proper procedural basis for dismissal of a non-justiciable claim." *Robinson*, 2011 WL 4437715, at *1 n.1.

[2] "Terminal leave" is also known as "transition leave" and is "a 'chargeable leave granted together with transition from the Service, including retirement,' that permits soldiers to take leave for up to 60 days (depending upon the soldier's accrued leave balance) immediately prior to termination from active duty service." Def.'s Mot. 4 n.2 (quoting Army Regulation 600-8-10 para. 4-21 (Feb. 15, 2006)).

Although plaintiff would not be officially retired until December 31, 2004, plaintiff's last assignment ended on July 31, 2004. *See* AR 000225–26. Plaintiff was on "permissive temporary duty," "ordinary leave," and "terminal leave" from August 1 to December 31, 2004. *See* AR 000133–34, 000226. Plaintiff worked for a contractor for USSOCOM from October 21 to November 26, 2004. *See* AR 000134, 000157–58. Plaintiff also was paid by USSOCOM to attend meetings overseas to discuss USSOCOM ammunition programs. *See* AR 000134, 000189. In October and November 2004, e-mails suggest that plaintiff was working as president of his newly formed company, Strategic Defense. *See* AR 000099–124.

Plaintiff officially retired from active duty on December 31, 2004. *See* AR 000219; Compl. ¶ 9. Plaintiff was retired in the grade of Colonel, O-6, after more than twenty-five years of active duty service, with plaintiff achieving his most recent promotion on December 1, 2001. *See* AR 000219–20, 000233.

   B.  *Plaintiff's Post-Retirement Criminal Conviction*

In November 2005, a federal grand jury indicted plaintiff and Strategic Defense on charges related to plaintiff's alleged attempt to induce a public official at MacDill Air Force Base to award work to Strategic Defense's clients. *See* Def. Mot. Ex. C. Plaintiff and Strategic Defense each were charged with one count of conspiracy to defraud the United States and to commit offenses against the United States in violation of 18 U.S.C. § 371, two counts of bribery in violation of 18 U.S.C. §§ 2 and 201(b)(1)(A)–(B), and two counts of wire fraud in violation of 18 U.S.C. §§ 2, 1343, and 1346. *Id.* In May 2006, the trial jury found plaintiff and Strategic Defense guilty on all five counts. *See* AR 000082–85.

Plaintiff and Strategic Defense moved for a judgment notwithstanding the verdict and, in the alternative, a new trial on all five counts. *See* AR 000198–215. In July 2006, the district court judge denied the motion on the conspiracy count, but granted the motion on the remaining counts. The district court judge cited e-mails from October and November 2004—prosecution exhibits 10, 11, 12, and 28 in the criminal case—as "ample" evidence from which the jury could find plaintiff and Strategic Defense guilty of conspiracy. *See* AR 000201–04, 000208; *see also* AR 00099–104 (prosecution exhibits 11 and 12), 000122 (prosecution exhibit 28). E-mails between plaintiff and William Burke, an employee of USSOCOM, suggest that plaintiff and Mr. Burke agreed that Mr. Burke would give preferential treatment to Strategic Defense's clients. AR 000099–104 (prosecution exhibits 11 and 12). One e-mail from Mr. Burke to a contractor showed Mr. Burke encouraging the contractor to retain Strategic Defense. *See* AR 000122 (prosecution exhibit 28). As noted by defendant, the e-mails on which the district court judge relied were transmitted before plaintiff officially retired on December 31, 2004. *See* Def.'s Mot. 6.

In August 2006, criminal judgments were entered and plaintiff was, *inter alia*, sentenced to fifteen months imprisonment. *See* AR 000072–78. Plaintiff's conviction was affirmed by the United States Court of Appeals for the Eleventh Circuit in September 2007. *United States v. Spellissy*, 243 F. App'x 550, 550–51 (11th Cir. 2007) (per curiam) (stating that "[t]he convictions arose out of the alleged general services agreement between [plaintiff], who was on 'terminal leave' from the military, and [Mr.] Burke, a civilian contractor, to obtain preferential treatment

3

for their clients"). The Eleventh Circuit recently denied plaintiff's latest appeal. *United States v. Spellissy*, 428 F. App'x 780 (11th Cir. 2011); *see also* Compl. ¶ 10.

> C.  *Deputy Assistant Secretary of the Army's Direction that Plaintiff Be Retired in the Grade of Lieutenant Colonel, O-5*

In October 2006, a Deputy Assistant Secretary of the Army wrote:

The [Army Grade Determination Review Board ("grade determination board")] has reviewed the retired grade for COL (Ret.) Thomas F. Spellissy [redacted] pursuant to [Army Regulation] 15-80, paragraph 4-1c to complete a new grade determination. Specifically, the Government did not discover COL Spellissy's misconduct on active duty until after his retirement, could not discover his misconduct before his retirement through due diligence, and did not therefore document his misconduct through conviction in federal district court until after his retirement.

I direct he will be retired from the United States Army in the grade of LTC/O-5.

AR 000069 (second alteration in original). The Deputy Assistant Secretary attached to his decision the criminal judgments against plaintiff and Strategic Defense and the e-mail exhibits in the criminal case, including the e-mails on which the district court judge relied in upholding the conspiracy conviction. *See* AR 000072–81, 000099–124.

While not addressed by the parties, plaintiff appears to have voluntarily retired based on length of service pursuant to 10 U.S.C. § 3911 (governing retirement of commissioned officers of the Army based on twenty or more years of service). The retirement grade for commissioned officers is governed by 10 U.S.C. § 1370. *See also* 10 U.S.C. § 3961 (specifically applying § 1370, which governs all military departments, to the Army).

According to 10 U.S.C. § 1370(a)(1), a commissioned officer of the military, other than a commissioned warrant officer, "shall . . . be retired in the highest grade in which he served on active duty *satisfactorily*, as determined by the Secretary of the military department concerned." 10 U.S.C. § 1370(a)(1) (emphasis added). According to 10 U.S.C. § 1370(a)(2)(A), in order to voluntarily retire in a grade above Major, the commissioned officer "must have served on active duty in that grade for not less than *three years*." 10 U.S.C. § 1370(a)(2)(A) (emphasis added).

Army regulations implement 10 U.S.C. § 1370. Paragraph 4-1.a of Army Regulation 15-80, "Army Grade Determination Review Board and Grade Determinations," provides that "[a]n officer is not automatically entitled to retire at the highest grade served on active duty" and, "[i]nstead, an officer is retired in the highest grade served on active duty satisfactorily, as determined by the [Secretary of the Army] or the Secretary's designee." Army Regulation 15-80 para. 4-1.a (July 12, 2002).

Paragraph 2-4 of Army Regulation 15-80 lists grade determination considerations, such as (1) the length of time in the grade and statutory requirements, (2) the performance level as reflected in evaluation reports and other records (although the grade determination board "will

4

consider whether reporting officials were aware of the misconduct or performance giving rise to the grade determination"), and (3) the nature and severity of any misconduct and the grade at which the misconduct occurred. Army Regulation 15-80 para. 2-4.

Paragraph 2-5 of Army Regulation 15-80 provides that service will "normally" be found to have been "unsatisfactory" when "[t]here is sufficient unfavorable information to establish that the soldier's service in the grade in question was unsatisfactory." Army Regulation 15-80 para. 2-5. Paragraph 2-5 also notes that "[o]ne specific act of misconduct may or may not form the basis for a determination that the overall service in that grade was unsatisfactory, regardless of the period of time served in grade." *Id.*

Paragraph 4-1.c of Army Regulation 15-80 provides that grade determinations are "normally accomplished at the time of retirement," but also provides that grade determinations can be "reopened" after retirement "[i]f *substantial new evidence* discovered contemporaneously with or within a short time following separation could result in a lower grade determination." Army Regulation 15-80 para. 4-1.c (emphasis added). Paragraph 4-1.c(2) continues, "For example, if an officer's misconduct while still on active duty is documented by . . . [a] conviction after retirement, and such misconduct was not discoverable through due diligence, a new grade determination may be completed." *Id.*

Army Regulation 600-8-29, "Officer Promotions," consistent with 10 U.S.C. § 1370 and paragraph 4-1.a of Army Regulation 15-80, provides that officers accepting a promotion to the grade of Colonel "must serve satisfactorily in the new grade" for three years. Army Regulation 600-8-29 para. 1-18.b(1)(b) (Feb. 25, 2005).

  D. *Plaintiff's Application to the Correction Board*

In October 2007, plaintiff petitioned the correction board to correct his records to reflect that he had retired in the grade of Colonel, O-6. *See* AR 000027–30.

Plaintiff alleged that the federal court "never determined an exact date when the alleged offense of conspiracy was initiated" and that the grade determination board only "assum[ed]" that plaintiff was on active duty when the conspiracy "started or took place." AR 000027. Plaintiff alleged that the "false assumption" that the conspiracy "started or took place" before he retired on December 31, 2004 could "only be concluded by drawing inferences from the trial." AR 000027–28.

Plaintiff further alleged that the finding that he engaged in misconduct on active duty was contradicted by the evidence. Plaintiff relied on the fact that Mr. Burke, the prosecution's "star witness," denied a conspiracy or any wrongdoing and no other witness testified against plaintiff. AR 000029. Plaintiff also pointed to the fact that the criminal judgment indicated that the offense "ended" on July 26, 2005, but did not address the start of the offense. *See* AR 000042. Plaintiff pointed out that his retirement date of December 31, 2004 was seven months before the alleged offense ended, which meant that plaintiff could have committed the offense during the seven months after he retired. *See* AR 000029. Plaintiff also inferred from the district court judge's reasoning when he departed from the sentencing guidelines that the grade determination board "c[a]me to a different and contradictory conclusion than Federal District Judge James

5

Whittemore" and that "[t]he judge has ruled that this case has nothing to do with [his] military career." AR 000029. The district court judge, in justifying a sentence outside the sentencing guidelines, wrote: "This defendant, a West Point Graduate with a masters in math and Operations Research, served this country and its armed forces in an exemplary and extraordinary manner for 29 years in the military. He has an outstanding record of serving his community." AR 000054.

### E.    The Correction Board's Decision Denying Plaintiff's Application

In July 2008, the correction board denied plaintiff's application. *See* AR 000019–26. The correction board stated that the evidence "concerning the conspiracy conviction shows that [plaintiff] was still on active duty, and as early as October 2004, exchanged [e-mails] with a government employee . . . in an effort to get preferential treatment for certain vendors who agreed to work with [plaintiff]'s company, [Strategic Defense]." AR 000023.

The correction board concluded that plaintiff was "not officially released from active duty for retirement until" December 31, 2004 and that plaintiff had engaged in "the misconduct that resulted in his civil[ian] court conviction of conspiracy to commit an offense to [sic] the United States as early as October 2004, while he was on transition leave more than two months prior to his official retirement." AR 000024–25.

The correction board noted that it did not view the conduct by plaintiff as "minor" and that it was not bound by the "pronouncement" of the district court judge that plaintiff's service was "satisfactory." AR 000025. The correction board described the district court judge's statement as "at best . . . advisory" and found that it did not "trump" the decisions of the Deputy Assistant Secretary and grade determination board, which were "made after weighing [plaintiff]'s conduct through the lens of the high standards and ethics expected of an Army Officer." *Id.*

Because plaintiff was not promoted to the grade of Colonel, O-6, until December 1, 2001 and because "the misconduct addressed by [the grade determination board occurred] in October 2004," the correction board concluded that plaintiff "did not complete the [three] years of satisfactory service required to retire in the grade of" Colonel, O-6. *Id.* Accordingly, the correction board found that the grade determination board had acted properly when it recommended that plaintiff be retired in the grade of Lieutenant Colonel, O-5.

The correction board further found that the grade determination board's action was "processed in accordance with the applicable laws and regulation." *Id.*

### F.    Plaintiff's Request for Reconsideration of the Correction Board's Decision

In August 2008, plaintiff requested reconsideration of the correction board's decision. *See* AR 000007–8. To show that the misconduct for which he was convicted did not occur when he was on active duty, plaintiff cited a then-recent decision by the district court judge in his criminal case denying plaintiff and Strategic Defense's motion for a new trial based on newly discovered evidence. *See* AR 000012. Plaintiff's motion for a new trial had described the newly discovered evidence as showing, *inter alia*, that plaintiff "was on active duty for the United States Army when the alleged conspiracy was born" and that "[t]he Department of Justice

d[idn't] have jurisdiction" over plaintiff.  AR 000013.  One piece of evidence that plaintiff had provided to the district court judge was a September 2007 letter from the Army Review Board Agency notifying plaintiff of the Deputy Assistant Secretary's and grade determination board's decisions to retire him in the grade of Lieutenant Colonel, O-5.  In denying plaintiff's motion, the district court judge stated:

> *It is undisputed that Defendant Spellissy had retired from active duty when he committed the offenses of conviction.*  Jurisdiction of the federal courts under Article III to prosecute former military servicemen for crimes committed in their civilian capacity cannot reasonably be questioned.  *In sum, when these offenses were committed, Defendant Spellissy was retired from active duty.*  He was subject to Article III jurisdiction.  What the Department of the Army says in the referenced letter is not material to the federal court's Article III jurisdiction.  Defendants' argument has no merit.

AR 000017 (emphasis added) (citation omitted).  Plaintiff described the order denying his motion for a new trial as a "judgment" that was "final" because the prosecution did not appeal it.  AR 000008.  Plaintiff stated, "The Court Order is substantive and legally binding evidence . . . to determine that the alleged Conspiracy conviction did not occur while I was on active duty."  *Id.*

Plaintiff also cited a document entitled "Sentence Monitoring Computation Data" that plaintiff received from a Federal Bureau of Prisons counselor at the federal detention center.  *Id.*; *see* AR 000066–67.  The Court understands that the document, generated by the Federal Bureau of Prisons, set forth the term of plaintiff's imprisonment and was intended to assist plaintiff in determining his projected release date.  As noted by plaintiff in his request for reconsideration, the document indicated that the "earliest date of offense" was July 26, 2005, but plaintiff had retired on December 31, 2004.

Plaintiff disputed the grade determination board's interpretation of the October 2004 e-mails as "wrong and directly contradict[ed] [by] the legal findings of the Court."  AR 000008.  Plaintiff argued that there was "no factual evidence that [he] committed any incident of misconduct while on active duty, and there is no question that [he] served satisfactorily" in the grade of Colonel, O-6.  *Id.*

        G.      *The Correction Board's Decision Denying Plaintiff's Request for Reconsideration*

In November 2008, the correction board denied plaintiff's request for reconsideration.  *See* AR 000001–8.  First, the correction board rejected plaintiff's argument with respect to the interpretation of the October 2004 e-mails as lacking merit.  Second, the correction board found that there was "sufficient" evidence "to suggest" that retiring plaintiff at the grade of Lieutenant Colonel, O-5, was "proper and in accordance with applicable regulations."  AR 000005.  According to the correction board, "This is further supported by the fact that the judge who overturned all but one of the guilty findings, clearly left standing the guilty verdict of conspiracy because the e-mails supported a finding of guilty."  *Id.*

Third, in light of the fact that the criminal judgment only indicated that the offense "ended" on July 26, 2005, the correction board discounted the "Sentence Monitoring Computation Data" document indicating that the "earliest date of offense" was July 26, 2005.

Lastly, the correction board addressed the "court's opinion that [plaintiff] was retired when he committed the offense." AR 000006. The Board stated, "Notwithstanding [the court's opinion], the available evidence suggests that [plaintiff] was actually on terminal leave when the offense was committed and the applicant has failed to provide sufficient evidence to establish that such was not the case." *Id.*

    *H.*    *Instant Action*

On April 4, 2011, plaintiff filed the instant action. Plaintiff seeks back retirement pay in excess of $50,000 and reinstatement to the retired grade of Colonel, O-6. *See* Compl. Prayer for Relief.

**II.**    **Discussion**

    *A.*    *Jurisdiction*

"The Tucker Act authorizes certain actions for monetary relief against the United States to be brought in the Court of Federal Claims." *Martinez v. United States*, 333 F.3d 1295, 1302 (Fed. Cir. 2003) (en banc). "The actions for which the Tucker Act waives sovereign immunity are actions pursuant to contracts with the United States, actions to recover illegal exactions of money by the United States, and actions brought pursuant to money-mandating constitutional provisions, statutes, regulations, or executive orders." *Id.* at 1302–03. With respect to this latter category of actions, the independent source of substantive law must "fairly be interpreted as mandating compensation by the Federal Government for the damages sustained." *United States v. Mitchell*, 463 U.S. 206, 216–17 (1983) (quoting *United States v. Testan*, 424 U.S. 392, 400 (1976)) (internal quotation marks omitted). The Federal Circuit held in *Fisher v. United States*:

> If the court's conclusion is that the Constitutional provision, statute, or regulation meets the money-mandating test, the court shall declare that it has jurisdiction over the cause, and shall then proceed with the case in the normal course. For purposes of the case before the trial court, the determination that the source is money-mandating shall be determinative both as to the question of the court's jurisdiction and thereafter as to the question of whether, on the merits, plaintiff has a money-mandating source on which to base his cause of action.

402 F.3d 1167, 1173 (Fed. Cir. 2005) (en banc section).

Here, this action is brought pursuant to 10 U.S.C. § 1370 (governing retirement grade of commissioned officers), 10 U.S.C. § 1552 (governing correction of military records), Army Regulation 15-80 (governing the grade determination board and grade determinations), and Army Regulation 15-185 (Mar. 31, 2006) (governing the correction board). *See* Compl. ¶ 5.

As an initial matter, neither 10 U.S.C. § 1552 nor Army Regulation 15-185 provides this Court with jurisdiction. As the Federal Circuit explained, "[E]ven though section 1552 mandates the payment of money if the correction board concludes[, for example,] that the service member's discharge was unlawful, section 1552 is not the 'money-mandating' statute that gives rise to the cause of action that provides the basis for a Tucker Act suit in the Court of Federal Claims." *Martinez*, 333 F.3d at 1315.

Thus, for this Court to have jurisdiction, either 10 U.S.C. § 1370 (governing retirement grade of officers) or Army Regulation 15-80 (governing the grade determination board and grade determinations) must "fairly be interpreted as mandating compensation by the Federal Government for the damages sustained." *Mitchell*, 463 U.S. at 216–17 (quoting *Testan*, 424 U.S. at 400). Section 1370(a)(1) provides that a commissioned officer, other than a commissioned warrant officer, "shall . . . be retired in the highest grade in which he served on active duty satisfactorily." 10 U.S.C. § 1370(a)(1). As noted earlier, this provision is subject to length of satisfactory service requirements based on the grade of the commissioned officer. *See* 10 U.S.C. § 1370(a)(1)–(a)(2)(A). Paragraph 4-1.a of Army Regulation 15-80 also provides: "An officer is not automatically entitled to retire in the highest grade served on active duty. Instead, an officer is retired in the highest grade served on active duty satisfactorily, as determined by the [Secretary of the Army] or the Secretary's designee." Army Regulation 15-80 para. 4-1.a. In short, subject to length of service requirements, the statute and regulation establish that a commissioned officer, other than a commissioned warrant officer, is entitled to be retired in the highest grade in which he served on active duty satisfactorily, as determined by the Secretary of the Army or his designee.

The Court concludes that 10 U.S.C. § 1370 and Army Regulation 15-80 paragraph 4-1.a can fairly be interpreted as money-mandating. The Court is persuaded by cases involving statutes and regulations that are similar to the statute and regulation at issue here. In *Duncan v. United States*, 949 F.2d 1134 (Fed. Cir. 1991), the Federal Circuit heard claims challenging determinations that *warrant officers* were not entitled to a retirement upgrade based on 10 U.S.C. § 1371,[3] which is similar to 10 U.S.C. § 1370, the statute at issue here. The plaintiffs in *Duncan* sought to avail themselves of 10 U.S.C. § 3911, which provides for voluntary retirement of *commissioned officers* based on length of service. *Duncan*, 949 F.2d at 1135. The court concluded that the plaintiffs' retirement grade was governed by 10 U.S.C. § 1371, which governs the retirement grade of *warrant officers*. *Duncan*, 949 F.2d at 1137. Although the Federal Circuit did not discuss jurisdiction in *Duncan*, the court addressed the claims on the merits. 949 F.2d at 1136–37; *see also Covill v. United States*, 959 F.2d 58, 59 n.1 (6th Cir. 1992) ("Because the appellant waived recovery of any amounts above $10,000, this action [based on 10 U.S.C.

---

[3] Section 1371 provides:

> Unless entitled to a higher retired grade under some other provision of law, a warrant officer retires, as determined by the Secretary concerned, in the permanent regular or reserve warrant officer grade, if any, that he held on the day before the date of his retirement, or in any higher warrant officer grade in which he served on active duty satisfactorily, as determined by the Secretary, for a period of more than 30 days.

10 U.S.C. § 1371.

§ 1371] was within the jurisdiction of the district court pursuant to the Tucker Act, 28 U.S.C. § 1346(a)(2) (1976).")[4]; *French v. United States*, 42 Fed. Cl. 49, 53 (1998) (describing a regulation as money-mandating when it provided that "[r]etired soldiers who have less than 30 years of active service are entitled, when their active service plus service on the retired list total 30 years, to be advanced on the retired list to the highest grade in which they served on active duty satisfactorily") (alteration in original).

The Court is also persuaded by *Lewis v. United States*, in which the Federal Circuit stated that "[r]etirement pay claims are brought under . . . money-mandating statutes." 458 F.3d 1372, 1376 n.2 (Fed. Cir. 2006). In so stating, the Federal Circuit specifically cited, *inter alia*, the statute at issue here, 10 U.S.C. § 1370. *Id.*

Accordingly, the Court concludes that plaintiff's claim for increased retirement pay is based on a money-mandating statute and regulation and the Court has jurisdiction to hear and decide plaintiff's claim.[5]

---

[4] Section 1346(a)(2) of Title 28 is often referred to as the "Little Tucker Act." *See Bright v. United States*, 603 F.3d 1273, 1289 (Fed. Cir. 2010) ("While the Tucker Act gives exclusive jurisdiction to the Court of Federal Claims for claims over $10,000, the Little Tucker Act provides federal district courts with jurisdiction, concurrent with the Court of Federal Claims, for claims against the government below $10,000."). A claim brought under the Little Tucker Act must be based on a money-mandating provision of law. *Bormes v. United States*, 626 F.3d 574, 578 (Fed. Cir. 2010).

[5] The Court recognizes that two decisions from the Claims Court and Court of Claims dismissed retirement upgrade claims for lack of jurisdiction. In *Koster v. United States*, the court held:

> The determination of satisfactory performance is committed by statute to the Secretary. Thus, even if this court were to determine that the Secretary's decision is reviewable, for example for a constitutional violation, this court could not affirmatively remake it as plaintiff asks us to do. Nor will the court substitute its own judgment where the administrative decision is supported by substantial evidence. A remand to an agency to make a determination that this court is not competent to make, without any immediate entitlement to money, is just the type of decision that was held to be beyond the power of the court in *Testan*. Accordingly, we must hold that this claim of plaintiff is not one that we can decide.

685 F.2d 407, 414 (Ct. Cl. 1982) (citations omitted); *see also Brown v. United States*, 4 Cl. Ct. 175, 179 (1983) (relying on *Koster*).

*Koster* and *Brown* are distinguishable from this case because (1) those cases were decided pre-*Fisher*, *see Tippett v. United States*, 98 Fed. Cl. 171, 179 (2011) ("Because *Fisher* altered the jurisdictional inquiry for Tucker Act suits, many military pay cases decided before *Fisher* offer questionable guidance as to this court's jurisdiction over such cases."), (2) those cases challenged the merits of the unsatisfactory finding, and (3) the Secretary or his designee had not found as an initial matter that the plaintiff served satisfactorily in those cases. Here, in

10

B.     *Standard of Review of the Military Correction Board's Decision*

Section 1552 of Title 10 delegates the power to correct military records to the secretaries of the military departments, acting through boards of civilians, "to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1). The Federal Circuit has "held that a service member need not seek relief from a military corrections board before suing in the Court of Federal Claims." *Metz v. United States*, 466 F.3d 991, 998 (Fed. Cir. 2006). However, when a service member chooses to seek relief from a military corrections board, the court "will not disturb the decision of [a] corrections board unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence." *Chambers v. United States*, 417 F.3d 1218, 1227 (Fed. Cir. 2005) (citing *Haselrig v. United States*, 333 F.3d 1354, 1355 (Fed. Cir. 2003)). The Court of Federal Claims does not sit as "a super correction board." *Skinner v. United States*, 594 F.2d 824, 830 (Ct. Cl. 1979).

A plaintiff must show by "cogent and clearly convincing evidence" that the board's decision is arbitrary, capricious, contrary to law, or unsupported by substantial evidence. *Wronke v. Marsh*, 787 F.2d 1569, 1576 (Fed. Cir. 1986) (quoting *Dorl v. United States*, 200 Ct. Cl. 626, 633 (1973)) (internal quotation marks omitted). "[M]ilitary administrators are presumed to act lawfully and in good faith like other public officers, and the military is entitled to substantial deference in the governance of its affairs." *Dodson v. U.S. Gov't, Dep't of Army*, 988 F.2d 1199, 1204 (Fed. Cir. 1993); *see also Richey v. United States*, 322 F.3d 1317, 1326 (Fed. Cir. 2003) (noting "the presumption of regularity that attaches to all administrative decisions").

When a service member chooses first to petition a military correction board, the Court of Federal Claims' review is limited to the administrative record. *Metz*, 466 F.3d at 998. If a plaintiff chooses to file a petition with a military correction board, the plaintiff will be precluded from later raising issues in court that were not raised before the board. *See id.* at 999; *Murakami v. United States*, 398 F.3d 1342, 1354 (Fed. Cir. 2005).

C.     *Defendant's Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted*

To survive a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to RCFC 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, ----, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When the court considers a motion to dismiss for failure to state a claim pursuant to RCFC 12(b)(6), the allegations of the complaint must be construed favorably to the pleader. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982). A non-justiciable claim must be dismissed. *See supra* note 1.

---

this post-*Fisher* case, plaintiff has previously been found to have served satisfactorily in the grade of Colonel, O-6, and challenges the procedures utilized to reopen his grade determination and to find his service unsatisfactory.

11

The Federal Circuit "has consistently recognized that, although the *merits* of a decision committed wholly to the discretion of the military are not subject to judicial review, a challenge to the particular *procedure* followed in rendering a military decision may present a justiciable controversy." *Adkins v. United States*, 68 F.3d 1317, 1323 (Fed. Cir. 1995). Plaintiff here challenges the application of the procedures set forth in Army Regulation 15-80 to reopen his grade determination and to find his service unsatisfactory. *See* Pl.'s Resp. 5, 15. As Federal Circuit precedent makes clear, that challenge presents a justiciable issue.

For example, in *Cedillo v. United States*, the Federal Circuit addressed whether the Army properly followed procedures for rescinding retirement orders before the plaintiff's effective retirement date after the Army learned that the plaintiff had been arraigned on criminal charges in civilian court. 124 F.3d 1266, 1267–68 (Fed. Cir. 1997). A regulation provided that a retirement order could not be rescinded in the absence of "substantial new evidence." *Id.* The court addressed whether the arraignment constituted "substantial new evidence." Although addressing that aspect of the case, the court expressly held that the merits of the decision to rescind the retirement order were beyond its reach. *Id.* Here, because plaintiff challenges the procedures followed by the Army, his claim is justiciable, and the Court therefore denies defendant's motion to dismiss for failure to state a claim upon which relief can be granted. *See supra* note 1.

D. *Defendant's Alternative Motion for Judgment on the Administrative Record*

In the alternative, defendant moves for judgment on the administrative record pursuant to RCFC 52.1. The Court must determine "whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record." *A & D Fire Prot., Inc. v. United States*, 72 Fed. Cl. 126, 131 (2006) (citing *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005)). In a manner "akin to an expedited trial on 'the paper record,'" the Court will make findings of fact where necessary. *CHE Consulting, Inc. v. United States*, 78 Fed. Cl. 380, 387 (2007) (quoting *A & D Fire Prot.*, 72 Fed. Cl. at 131).

Here, it is not disputed that plaintiff was promoted to the grade of Colonel, O-6, on December 1, 2001 and that plaintiff was required to serve satisfactorily in that grade for three years, until at least November 30, 2004, to be retired in that grade pursuant to 10 U.S.C. § 1370(a)(2)(A) and Army Regulation 15-80 paragraph 4-1.a. It is also not disputed that, although plaintiff began taking different types of leave after his last assignment ended on July 31, 2004, plaintiff did not actually retire from active duty until December 31, 2004. The parties likewise do not dispute that plaintiff was initially retired in the grade of Colonel, O-6. The parties *do dispute* whether the Army properly reopened plaintiff's grade determination and properly found that plaintiff failed to serve "satisfactorily" in the grade of Colonel, O-6, for three years.

The Court cannot find that plaintiff has satisfied his burden to show by "cogent and clearly convincing evidence" that the board's decision was arbitrary, capricious, contrary to law, or unsupported by substantial evidence. *Wronke*, 787 F.2d at 1576 (quoting *Dorl*, 200 Ct. Cl. at 633) (internal quotation marks omitted). The Army discovered "substantial new evidence" shortly after plaintiff's retirement that "could" result in a lower grade determination. Army Regulation 15-80 para. 4-1.c. The "substantial new evidence" was plaintiff's "misconduct while

still on active duty . . . documented by . . . [a] conviction after retirement, and such misconduct was not discoverable through due diligence." Army Regulation 15-80 para. 4-1.c(2). Plaintiff had been convicted in federal court of conspiracy to defraud the United States and to commit offenses against the United States. The district court judge specifically relied on e-mails in upholding plaintiff's conspiracy conviction. Those e-mails were transmitted before plaintiff officially retired and the Army rationally concluded that the e-mails showed that plaintiff sought to obtain preference from a USSOCOM employee, Mr. Burke, for plaintiff's company's clients. Accordingly, the action of the Army in reopening plaintiff's grade determination was not arbitrary, capricious, contrary to law, or unsupported by substantial evidence. *See Chambers*, 417 F.3d at 1227.

Having properly reopened plaintiff's grade determination, the Army was required to decide whether plaintiff served satisfactorily in the grade of Colonel, O-6, for three years. Paragraph 2-5 of Army Regulation 15-80 provides that service will "normally" be found to have been "unsatisfactory" when "[t]here is sufficient unfavorable information to establish that the soldier's service in the grade in question was unsatisfactory." Army Regulation 15-80 para. 2-5. The paragraph notes, "One specific act of misconduct may or may not form the basis for a determination that the overall service in that grade was unsatisfactory, regardless of the period of time served in grade." *Id.* Paragraph 2-4 of Army Regulation 15-80 lists grade determination considerations. *See* Army Regulation 15-80 para. 2-4. Based on the conspiracy conviction and other evidence discussed above, the Army did not act arbitrarily, capriciously, contrary to law, or without substantial evidence when it found that plaintiff failed to serve "satisfactorily" in the grade of Colonel, O-6, for three years. *See Chambers*, 417 F.3d at 1227.

In finding that the Army acted properly in determining plaintiff's retirement grade, the Court has considered and rejected the principal arguments advanced by plaintiff.

      1.     Statements of District Judge

Plaintiff points to evidence that he contends shows that he committed the offense of conspiracy after he retired from active duty. For example, the district judge in his order denying plaintiff a new trial based on newly discovered evidence wrote that the conspiracy offense was committed after plaintiff retired from active duty, and the district judge in justifying a departure from the sentencing guidelines stated that plaintiff had served in the military satisfactorily. However, under the required deferential standard of review, the Court is not persuaded that the correction board was required to give greater weight to the statements of the district judge than it did. *See Chambers*, 417 F.3d at 1227.

      2.     Law of the Case, Issue Preclusion, and Claim Preclusion

Plaintiff also argues that—under the doctrines of law of the case, issue preclusion, and claim preclusion[6]—the correction board and this Court are bound by the assertion of the district

---

[6] Under the law of the case doctrine, "a court should not reopen issues decided in earlier stages of the same litigation." *Agostini v. Felton*, 521 U.S. 203, 236 (1997).

13

judge in the criminal case that plaintiff did not commit the conspiracy offense before he officially retired. *See* Pl.'s Resp. 5, 15–25; Compl. ¶¶ 15, 17, 19, 23, 30. For example, in denying plaintiff a new trial based on newly discovered evidence, the district court judge wrote:

> Defendants apparently contend, although they do not develop their legal argument or cite any supporting authority, that Spellissy was considered to be on active duty at the time of the offenses and therefore the military had exclusive jurisdiction over him because the crimes were related to Spellissy's military duties. Defendants' argument for a new trial based on this letter [from the Army Review Board Agency notifying plaintiff of the Deputy Assistant Secretary's and grade determination board's decisions to retire him at the grade of Lieutenant Colonel, O-5,] fails as they have not and cannot establish the materiality of the letter and how it constitutes "newly discovered" evidence.
>
> *It is undisputed that Defendant Spellissy had retired from active duty when he committed the offenses of conviction.* Jurisdiction of the federal courts under Article III to prosecute former military servicemen for crimes committed in their civilian capacity cannot reasonably be questioned. *In sum, when these offenses were committed, Defendant Spellissy was retired from active duty.* He was subject to Article III jurisdiction. What the Department of the Army says in the referenced letter is not material to the federal court's Article III jurisdiction. Defendants' argument has no merit.

AR 000016–17 (emphasis added).

Plaintiff's invocation of the doctrines of law of the case, issue preclusion, and claim preclusion is unavailing. The law of the case doctrine is inapplicable to plaintiff's petition before the correction board and plaintiff's action in this case, which are separate and distinct proceedings from plaintiff's criminal case. Moreover, plaintiff has not demonstrated that "resolution of the issue [of whether plaintiff committed the offense of conspiracy before he officially retired] was essential to a final judgment" against plaintiff in the criminal case, as is required to apply issue preclusion. *Shell Petroleum, Inc. v. United States*, 319 F.3d 1334, 1338 (Fed. Cir. 2003). In view of the fact that claim preclusion "bars a second suit," *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5 (1979), Mr. Spellissy has failed to demonstrate how he, as plaintiff in this action, may invoke claim preclusion against the United States.

---

Under the doctrine of issue preclusion (also known as collateral estoppel), "a judgment on the merits in a first suit precludes relitigation in a second suit of issues actually litigated and determined in the first suit." *Shell Petroleum, Inc. v. United States*, 319 F.3d 1334, 1338 (Fed. Cir. 2003) (quoting *In re Freeman*, 30 F.3d 1459, 1465 (Fed. Cir. 1994)) (internal quotation marks omitted).

The doctrine of claim preclusion provides that "a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n.5 (1979).

14

3.      Judicial Estoppel

Plaintiff also argues that judicial estoppel precludes defendant from arguing in this action that plaintiff committed the offense before plaintiff officially retired. *See* Pl.'s Resp. 22–25; Compl. ¶¶ 26–29, 31–33. "[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Biomedical Patent Mgmt. Corp. v. Cal., Dep't of Health Servs.*, 505 F.3d 1328, 1341 (Fed. Cir. 2007) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)). The purpose of the doctrine of judicial estoppel is to protect the integrity of the judicial process, and non-exhaustive, non-prerequisite factors to consider in deciding whether to apply the doctrine are: (1) whether the party's later and earlier positions are "clearly inconsistent"; (2) whether the party succeeded in persuading the earlier court to adopt the party's position, which would create the "perception" that the later or earlier court was misled; and (3) whether the party asserting the inconsistent position would create an unfair advantage for the party or unfair disadvantage for the other party. *Biomedical Patent Mgmt. Corp.*, 505 F.3d at 1341 (quoting *New Hampshire*, 532 U.S. at 750–51).

Here, defendant has not assumed a position in this action contrary to the prosecution's position in the criminal case. Defendant's position in this case is that the conspiracy began before plaintiff officially retired and continued after plaintiff officially retired. Def.'s Reply 16–17. Contrary to plaintiff's argument, the prosecution's position in the criminal case was not that plaintiff only committed the conspiracy after he officially retired. Plaintiff relies on the fact that the prosecutor in the criminal case stated to the jury: (1) "But what this case boils down to is Mr. Burke accepting money for providing preferential treatment for businesses which (Plaintiff) and his company [Strategic Defense], also a defendant, worked as a consultant, after his retirement from the United States military"; and (2) "Who employed him? (Plaintiff), [Strategic Defense] employed Mr. Burke. Why? (Plaintiff) needed an 'in' at SOCOM. He need an 'in' on these projects"; and (3) "(Plaintiff) had no more juice. He wasn't able to direct anything within SOCOM but Mr. Burke was." Pl.'s Resp. 23 (internal quotation marks and emphasis omitted).

However, it is not clear whether the prosecutor was referring to when plaintiff "effectively," as opposed to "officially," retired. Although plaintiff remained on active duty until December 31, 2004, plaintiff's last assignment ended on July 31, 2004. Plaintiff was on "permissive temporary duty," "ordinary leave," and "terminal leave" from August 1 to December 31, 2004. E-mails introduced in the criminal case tend to show that plaintiff was working as president of his newly formed company, Strategic Defense, in October and November 2004 and that during this period plaintiff exchanged e-mails with Mr. Burke in furtherance of the conspiracy. Indeed, the district judge relied on those e-mails in upholding Mr. Spellissy's conspiracy conviction.

Defendant also persuasively points out that the indictment charged plaintiff and Strategic Defense with engaging in a conspiracy that existed "[f]rom on or about a date in early 2004 to on or about July 26, 2005" and alleged thirteen overt acts in furtherance of the conspiracy that occurred between April 24, 2004 and December 21, 2004, before plaintiff officially retired on

15

December 31, 2004. *See* Def.'s Mot. 27 (quoting Def.'s Mot. Ex. C para. 6) (alteration in original).

Accordingly, the Court rejects plaintiff's argument that defendant should be judicially estopped from arguing that the conspiracy began before plaintiff retired on December 31, 2004 and continued after he retired.

Based on the foregoing, the Court concludes that the decision of the correction board was well supported by substantial evidence of record. Plaintiff has failed to show by "cogent and clearly convincing evidence" that the board's decision was arbitrary, capricious, contrary to law, or unsupported by substantial evidence. *Wronke*, 787 F.2d at 1576 (quoting *Dorl*, 200 Ct. Cl. at 633) (internal quotation marks omitted). Accordingly, the Court grants defendant's alternative motion for judgment on the administrative record.

## CONCLUSION

In view of the foregoing, the Court holds that it has jurisdiction to hear and determine plaintiff's claim for increased retirement pay; denies defendant's motion to dismiss for failure to state a claim upon which relief can be granted; and grants defendant's alternative motion for judgment on the administrative record. The Clerk shall enter judgment accordingly.

                                                   s/ George W. Miller
                                                  GEORGE W. MILLER
                                                       Judge